J-S10032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| 9795 PERRY HIGHWAY MANAGEMENT, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WALTER BERNARD AND WYNTON BERNARD | : | No. 754 WDA 2023 |
| Appellants | : | |

Appeal from the Order Entered June 6, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-007843

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: MAY 8, 2024**

Walter Bernard ("Walter") and Wynton Bernard ("Wynton") (collectively "the brothers") appeal *pro se* from the order holding Walter in contempt of court.[1]  After careful review, we dismiss the appeal as moot.

The facts relevant to the issues raised in this appeal arise from the following circumstances.  In July 2017, Walter, a Pittsburgh area attorney, and his brother, Wynton, entered a six-year commercial lease, with 9795 Perry Highway Management, LLC ("landlord") for premises located at 9795

---

[1] We observe that Wynton does not have standing to bring this appeal because the contempt order was solely against Walter and did not affect or aggrieve Wynton.  ***See Commonwealth v. Polo***, 759 A.2d 372, 373 n.1 (Pa. 2000) (holding that, pursuant to Pa.R.A.P. 501, only an aggrieved party can appeal from an order entered by a lower court); ***see also Ratti v. Wheeling Pittsburgh Steel Corp.***, 758 A.2d 695, 700 (Pa. Super. 2000) (holding that a party is aggrieved when the party has been adversely affected by the decision from which the appeal is taken).

Perry Highway, in Pittsburgh, ("the premises"). The brothers' company, Amaze Me, LLC d/b/a Escape Room Sports, operated an escape room at the premises. However, due to the COVID-19 pandemic, the brothers were forced to temporarily shut down the business in 2020. By July 2020, the brothers owed approximately $100,000 in unpaid rent to landlord. Pursuant to the terms of the lease, landlord obtained a confession of judgment against the brothers for the unpaid rent. The brothers petitioned to open or strike the judgment for the purpose of determining whether they were entitled to a set-off or credit for amounts paid to landlord by a tenant to whom landlord re-rented the premises.[2] In July 2021, the trial court entered an order denying the brothers' petition to open or strike the judgment,[3] but permitted landlord to seek discovery from the brothers.

---

[2] Landlord agreed that the brothers were due a credit to offset the judgment amount because of the rent paid by the new tenant who replaced them.

[3] The brothers appealed the order denying their petition to open or strike the judgment; however, because they did not file a supersedeas bond, the proceedings to execute judgment in this matter were not stayed. **See** Pa.R.A.P. 1731(a) (providing that, to obtain a stay of an order for the payment of money when an appeal of that order has been filed, the appellant must file a supersedeas bond in the amount of 120% of the amount due under the order); **see also Glynn v. Glynn**, 789 A.2d 242, 248 n.7 (Pa. Super. 2001) (holding that, absent supersedeas, the authority of a trial court after an appeal has been taken includes the authority to enforce any order entered in the matter). This Court affirmed the order denying the petition to open or strike, and our Supreme Court denied allowance of appeal in December 2022. **See 9795 Perry Highway Management, LLC v. Bernard**, 273 A.3d 1098 (Pa. Super. 2022), *appeal denied*, 289 A.3d 888 (Pa. 2022).

During the ensuing discovery phase of the proceedings, a pattern emerged whereby the brothers repeatedly failed to respond to landlord's discovery requests, forcing landlord to file three motions to compel and five motions for sanctions, and requiring several trial court judges to conduct hearings and to enter a total of seven orders directing the brothers to respond to the discovery requests.[4] In this regard, Honorable Patrick M. Connelly entered orders in January 2021 and February 2021 granting landlord's motion to compel and motion for sanctions directing the brothers to respond to landlord's discovery requests. In October 2021, Judge Connelly ordered the brothers to respond to landlord's additional discovery requests. In July 2022, in response to a motion for sanctions, Honorable Philip A. Ignelzi ordered the

_____

[4] During this period, in November 2022, the brothers filed a first petition to set bond, claiming a credit against the judgment for rent paid to landlord by the replacement tenant. Honorable John T. McVay, Jr. issued an order scheduling a hearing on the petition and **staying** the discovery in aid of execution until the hearing. However, the brothers and landlord agreed to postpone the first hearing indefinitely. In March 2023, the brothers filed a second petition to set bond claiming that the first petition was filed while the matter was on appeal, and the amount of set-off or credit remained in dispute. On March 21, 2023, Honorable Mary C. McGinley issued an order scheduling a hearing on the second petition and ruling that discovery in aid of execution **may proceed** but that execution could not commence until the amount of set-off or credit was determined at the hearing. The brothers appealed Judge McGinley's March 21, 2023 order. Once again, however, the brothers failed to file a supersedeas bond pursuant to section 1731(a), which was required to stay execution of the judgment during the appeal. Judge McGinley cancelled the hearing due to the brothers' appeal. This Court *sua sponte* quashed the appeal. ***See Perry Highway Mgmt., LLC v. Bernard***, 352 WDA 2023 (*per curiam* order filed June 2, 2023). On June 15, 2023, shortly after this Court quashed the appeal of Judge McGinley's order, the within appeal was filed.

brothers to answer the discovery requests within thirty days, or face sanctions in the amount of $1,500. *See* N.T., 7/6/22, at 6. In February 2023, in response to a renewed motion for sanctions, Judge Ignelzi ordered the brothers to reply to the discovery requests within thirty days or risk additional monetary sanctions or penalties. In April 2023, Judge Ignelzi conducted a hearing on an additional motion for sanctions and ordered the brothers to answer the discovery requests by May 1, 2023, or risk being jailed. *See* N.T., 4/27/23, at 11-14. When the brothers failed to comply with that directive, Judge Ignelzi directed deputies to bring Walter into court in handcuffs for a hearing on May 3, 2023. At the hearing, Judge Ignelzi warned Walter that any further failure to comply with the court's discovery orders would be deemed contempt of court, resulting in a warrant for Walter's arrest and his confinement in jail until the contempt was purged. *See* N.T., 5/3/23, at 5-6, 34, 36, 38. On May 4, 2023, Judge Ignelzi entered an order directing the brothers to respond to landlord's discovery requests by Monday, May 15, 2023, at 5:00 p.m. *See* Order, 5/4/23, at 1-2 (unnumbered).

On May 16, 2023, landlord filed its fifth motion for sanctions based on the brothers' failure to comply with Judge Ignelzi's May 4, 2023 order. Consequently, in an order dated May 16, 2023, Judge Ignelzi found Walter in contempt of court, and issued a warrant for his arrest. The May 16, 2023 order was not docketed until June 5, 2023. Walter filed a timely notice of

appeal from that order, and both he and the trial court complied with Pa.R.A.P. 1925.[5]

Walter raises the following issues for our review:

1. Whether the trial court abused its discretion and erred in holding Walter . . . in contempt of court where the trial court lacked jurisdiction over the matter at issue?

2. Whether the trial court abused its discretion and erred in issuing its contempt order holding Walter . . . in contempt of court without setting any conditions upon which [Walter] could purge himself of the contempt[?]

3. Whether the trial court abused its discretion and erred in holding Walter . . . in contempt and issuing a warrant for his arrest without undertaking the required procedural safeguards for criminal or civil contempt[?]

4. Whether the trial court abused its discretion and erred in holding Walter . . . in criminal contempt for an alleged violation of a civil discovery order?

5. Whether the trial court abused its discretion and erred in holding Walter . . . in contempt of court without conducting an evidentiary hearing or providing an opportunity to be heard?

Walter's Brief at 3-4.

After the appeal was filed and pending before this Court, Walter appeared for a hearing before another judge on August 9, 2023, at which time he was arrested and transported to jail, where he remained until August 21, 2023, when Judge Ignelzi held a contempt hearing. At the contempt hearing, Walter agreed to settle the judgment for $80,000, and wrote a check in that

---

[5] In lieu of authoring a Rule 1925(a) opinion, Judge Ignelzi directed this Court to the places in the record where the reasons for its June 5, 2023 order could be found. *See* Order in Lieu of Opinion, 11/8/23, at 1.

amount. *See* N.T., 8/21/23, at 2-24. Walter elected to remain in jail until the check cleared. *Id*. at 20-23. On August 25, 2023, Judge Ignelzi entered an order allowing for Walter's immediate release from jail because he purged the contempt. The judgment was marked as satisfied on August 29, 2023.

Given that each of Walter's issues on appeal pertains to the June 5, 2023 contempt order and the contempt has since been purged, we must preliminarily determine whether this Court has jurisdiction to address the appeal.[6] It is a well-established principle of law that this Court will not decide moot questions. As a general rule,

> an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*M.B.S. v. W.E.*, 232 A.3d 922, 927 (Pa. Super. 2020). Importantly, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so. We are not in the business of pronouncing that past actions which have no

---

[6] On September 18, 2023, this Court issued a rule to show cause why the appeal should not be dismissed as moot, given that the order appealed from found Walter in contempt, and he had since purged himself from his contempt. *See* Order, 9/18/23, at 1. Walter filed a response to the rule to show cause, and the question of mootness was deferred to this panel for disposition.

demonstrable continuing effect were right or wrong." ***Spencer v. Kemna***, 523 U.S. 1, 18 (1998).

Walter claims that the appeal is not moot because a case or controversy still exists due to the circumstances under which he settled the case. ***See*** Walter's Reply to Rule to Show Cause at 6-8.[7] He contends that his settlement of the judgment against him does not moot his appeal because it was involuntary and was made under duress. ***Id***.

Instantly, a case or controversy does not exist because Walter resolved the underlying matter and purged himself of his contempt. As a result, there has been an intervening change in the factual posture of this case which entirely resolved both the case and the controversy at issue in this appeal. ***See M.B.S.***, 232 A.3d at 927. As such, Walter's appeal from Judge Ignelzi's June 5, 2023 order is moot because this Court cannot enter an order that has any legal force or effect. ***Id***. This Court will not issue a pronouncement that past actions by the trial court which have no demonstrable continuing effect were right or wrong. ***See Spencer***, 523 U.S. at 18.

Walter alternatively argues that one or more of the exceptions to the mootness doctrine apply to the instant appeal. This Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: (1) the case involves a

---

[7] In his brief, Walter does not address the question of mootness, but rather discusses only the merits of his appellate issues. ***See*** Walter's Brief at 1-41. Thus, we will review the issue of mootness based on the arguments that Walter offered in his response to the rule to show cause.

question of great public importance; (2) the question presented is capable of repetition and apt to elude appellate review; or (3) a party to the controversy will suffer some detriment due to the decision of the trial court. **See Warmkessel v. Heffner**, 17 A.3d 408, 412-13 (Pa. Super. 2011).

Walter claims that the public importance exception applies because this case was on appeal when Judge Ignelzi issued the contempt order, which divested the judge of jurisdiction to enter that order. According to Walter, his constitutional rights were violated when he was arrested and jailed while his appeal was pending. **See** Walter's Reply to Rule to Show Cause at 8-9. Walter insists that "[i]t is of public importance that judicial officers and citizens be allowed to assert binding legal arguments without having their constitutional rights deprived." **Id**. at 9.

We conclude that this case does not present a matter of great public importance. The great public importance exception is rarely invoked by appellate courts to decide moot issues, and this Court is even more reluctant to decide moot questions which raise constitutional issues. **See In re Gross**, 382 A.2d 116, 120-21 (Pa. 1978); **see also Wortex Mills, Inc. v. Textile Workers Union**, 85 A.2d 851, 857 (Pa. 1952) (explaining that constitutional questions are not to be dealt with abstractly). Moreover, Judge Ignelzi had jurisdiction to enter the May 4, 2023, and May 16, 2023 orders.[8] Given the

_____

[8] Generally, "after an appeal is taken . . . the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). *(Footnote Continued Next Page)*

- 8 -

degree of non-compliance by Walter in response to numerous orders of court, and the fact that Judge Ignelzi acted within his jurisdiction, we decline to find that this appeal presents a question of great public importance.

Next, Walter claims that this matter falls within the second exception to the mootness doctrine because it is capable of repetition yet evading appellate review. Walter attempts to bring his case within the scope of this exception by arguing that Judge Ignelzi failed to afford Walter his procedural due process rights by issuing an order of contempt without first conducting a hearing. Walter maintains that the May 16, 2023 order was entered without providing him any procedural protections as to civil or criminal contempt. Furthermore, Walter claims that, after remaining in jail for approximately twelve days without a contempt hearing, he wrote a check to try to settle the underlying case to regain his freedom. Walter asserts that, even if the contempt was civil in nature, it turned punitive because he had to remain in jail until his check cleared. On this basis, Walter contends that "the issue of contempt is capable of repetition and too important to be denied review because the [t]rial

---

However, Rule 1701(b) provides that "after an appeal is taken . . . the trial court . . . may take other action . . . otherwise ancillary to the appeal." Pa.R.A.P. 1701(c). As noted previously, Walter did not file the "appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid," as required by Pa.R.A.P. 1731(a) in either of the previously filed appeals. *See Perry Highway Mgmt.*, 273 A.3d 1098; *see also Perry Highway Mgmt.*, 352 WDA 2023. Accordingly, there was no automatic supersedeas. With no stay in place, Judge Ignelzi had jurisdiction to enter the May 4, 2023, and May 16, 2023 orders.

[c]ourt's actions have remained punitive." Walter's Reply to Rule to Show Cause at 13.

We decline to find that the second exception to the mootness doctrine applies. Here, the trial court issued several discovery orders compelling the brothers to respond to landlord's discovery requests. The trial court additionally conducted several hearings at which it repeatedly warned Walter that his continued non-compliance with the discovery orders would result in jail time. When Walter's refusal to comply with the May 4, 2023 order resulted in his arrest and incarceration, the trial court gave him the option of either wiring the funds immediately and get out of jail, or remaining in jail until his check cleared. *See* N.T., 8/21/23, at 20-23. Walter elected to remain in jail until his check cleared. *Id*. Although Walter attempts to characterize his contempt proceedings as criminal in nature, they were civil contempt proceedings.[9] Thus, as the record discloses no due process violation, we

_____

[9] If the dominant purpose of the contempt order is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. *See Stahl v. Redclay*, 897 A.2d 478, 486 (Pa. Super. 2006) (explaining that where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, proceedings to enforce compliance with the decree of the court are civil in nature). The purpose of a civil contempt order is to coerce the contemnor to comply with a court order. *See Orfield v. Weindel*, 52 A.3d 275, 279 (Pa. Super. 2012). Further, in civil contempt, the contemnor is able to purge himself of the contempt, and thus, holds the keys to the jailhouse door; that is, he may relieve himself of the sanction by complying with the court's order. *See Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa. Super. 2004).

conclude that this matter does not present a question that is capable of repetition and apt to elude appellate review.

Finally, Walter argues that the third exception to the mootness doctrine applies because he will suffer some detriment due to the decision of the trial court. In this regard, Walter contends that he is subject to further consequences from Judge Ignelzi's June 5, 2023 order because it will impact his current licenses to practice law in multiple jurisdictions, and may adversely impact his aspirations to become a member of the State Bar of California. Walter points out that he must submit a moral character application which includes a question pertaining to whether he has ever been held in contempt of court. Walter reasons that, because he was held in contempt without a hearing by the trial court, he will continue to suffer an injury pertaining to his career as an attorney without this Court's review. On this basis, Walter argues that this matter falls within the third exception to the mootness doctrine because he will likely suffer harm if this Court does not rule on the matter.

We find this argument unpersuasive because Walter is not subject to further contempt proceedings or sanctions, and the concluded contempt proceedings did not result in a criminal conviction that could cause him to face repercussions beyond those imposed by Judge Ignelzi.[10] Thus, as there are

_____

[10] This Court has held in civil contempt cases that an appeal from an order of incarceration is not moot when, although contemnor has been released from prison, he remains subject to a support order, and failure to comply with such an order might again subject him to contempt proceedings. ***See***
*(Footnote Continued Next Page)*

no collateral consequences stemming from the contempt order, we decline to find that the third exception to the mootness doctrine applies to this matter.

Accordingly, given our determination that the appeal is moot and no exceptions to the mootness doctrine apply, we dismiss the appeal.

Appeal dismissed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 5/8/2024

---

***Warmkessler***, 17 A.3d at 413.  This situation does not exist here because Walter does not remain subject to any further court orders following his release from incarceration.  ***See Delaware River Preservation Co., Inc. v. Miskin***, 923 A.2d 1177, 1183 n.3 (Pa. Super. 2007).  We have also determined that the facts here are distinct from those in ***Diamond v. Diamond***, 715 A.2d 1190, 1195 n.8 (Pa. Super. 1998), because the sanction imposed on Walter, arresting and imprisoning him until he purged the contempt, did not result in a criminal conviction that could cause him to face repercussions beyond those imposed by Judge Ignelzi.  ***See id***.